## Birkholz v. Birkholz.

March 7, 1947.

· Edward P. Hill, Judge.

W. W. Burchett and Joe Hobson for appellant.

Combs & Combs for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming in part, reversing in part.

We have before us another impressive example of grief that so frequently follows in the wake of divorce.

The appellant, Sylvania Birkholz, instituted action in the Floyd Circuit Court against appellee, John Birkholz, wherein she sought divorce and custody of their child, Charles Robert Birkholz, then an infant two years of age. As grounds, she alleged cruel and inhuman treatment.

The appellee filed answer and counterclaim and sought divorce on the grounds of lewd and lascivious conduct on the part of the appellant.

On June 2, 1943, judgment was entered granting appellee a divorce on his counterclaim, and giving the custody of the child to its maternal grandparents, Jasper Watkins and Cora Watkins.

Appellee excepted to that portion of the judgment relative to the custody of the child and was granted an appeal, which failed for want of prosecution.

Sometime about the middle of the year 1942, appellee was inducted into the Army of the United States. He remained in that service, after having spent some time overseas, until he was discharged on February 12, 1946. Upon his discharge from the service, he filed

motion in Floyd Circuit Court to redocket the case and moved the court to award him the full custody and control of his son, then 6 years of age. As grounds for his motion, he alleged that he was the proper person to have the care and custody and that the grandparents were not proper persons by reason of their limited means and circumstances. He alleged that the child was being neglected and that the home influence was bad for the child, and that the appellant, Sylvania Birkholz, was not a fit person to have the custody of the child.

Appellant, in response, denied the allegations of appellee and prayed to be awarded the child's custody.

Upon a hearing, the court adjudged that appellant be given the general care and custody of the child but that appellee should have the custody of the child each year for a period of six weeks beginning about June 1st of each year. The court further directed that appellee execute bond each year in the amount of $250 to secure the return of the child at the end of the six weeks' period. Both parties excepted to the judgment and prayed for, and were granted, appeals to the Court of Appeals.

Appellant then executed supersedeas bond and filed motion to stay the enforcement of the judgment pending appeal. She lost in this move.

Appellee then filed motion and was granted a cross appeal from the judgment. This matter is now before us on the appeal and cross appeal.

For reversal of the judgment appellee contends: (1) The evidence and judgment in the original proceeding adjudging a divorce to appellee on the ground of lewd and lascivious conduct and denying her claim of custody of the child was decisive on the question of appellant's moral fitness to have the care and custody of the child, and that the record and judgment were before the court for its consideration on trial of appellee's motion for custody. (2) The divorce judgment was granted at a time when appellee was in the service and temporarily absent from home, and unable to exercise his right as father and natural guardian, to the custody of his child, and, therefore, the judgment cannot in any sense, in view of the evidence, be construed as a denial of his own fitness, morally or otherwise, to have such custody. (3)

It is true it was encumbent upon appellee to show a change of circumstances or conditions since entry of the divorce judgment, affecting the welfare of the child, and this was clearly established on trial of the motion. (4) But it was encumbent likewise upon appellant, once having been denied custody of the child, to show a change of conditions or circumstances affecting the welfare of the child, and this she wholly failed to do. (5) The welfare and best interest of the child can best be promoted by awarding its full and exclusive care and custody to its father, and the trial court erred in overruling his motion to be awarded such custody. And (6) it was error for the court to require appellee to execute bond or to deposit money in lieu of bond as a condition to the exercise of his right of custody during the six weeks period so awarded by the judgment.

Appellant insists: (1) The appellee wholly failed to establish any change of conditions which would authorize the court to alter the judgment entered on June 2, 1943. (2) There is no evidence to the effect that appellant is promiscuously immoral. She is, therefore, entitled to the custody of the infant child, Charles Robert Birkholz. (3) The welfare and happiness of this little boy demand that his care, custody and control be given to his mother. And (4) should the court determine that the appellee is entitled to the custody of this little boy for any period of time, he should be required to execute bond in at least the sum of Five Thousand ($5,000) Dollars as a guaranty that he will comply with the judgment of the court.

There is almost an irritating prevalence of charges and countercharges in this record. We deem it unnecessary to go into the details or circumstances out of which these charges have grown. These matters were all heard by, and no doubt taken into consideration by the court below. While there can be no completely satisfactory corrective of the situation thus created by these parties, we think that the chancellor, in a well considered opinion, reached as nearly as possible a proper, if not the best, corrective.

The appellee and his parents are residents of the State of New York. The appellant and her parents are residents of the State of Kentucky. Both the appellant and appellee have again married. The record does not

disclose a great deal of difference as to the home atmosphere and surroundings of either of the claimants of this child.

Appellee repeatedly adverts to the conduct of appellant, out of which grew the charges of lewd and lascivious conduct, and which appears to have been based entirely upon her conduct with C. C. Turner after her instituting action for divorce and her separation from appellee, but prior to her having obtained a divorce. Appellant afterwards married C. C. Turner and the record does not disclose any misconduct other than this. There was testimony that her reputation was good aside from this particular misconduct. The chancellor, no doubt, in reaching his conclusion had in mind the case of Clark v. Clark, 298 Ky. 18, 181 S. W. 2d 397, 398, wherein this court said:

"In these circumstances it is indeed difficult to determine whether the custody of the child should have been given to the appellee or to the appellant. The paramount consideration is, of course, the welfare of the child. The child is very young and the courts are always loath to deprive a mother of the custody of very young children. It is only when it clearly appears that the mother is an unfit person to have the custody of a young child that she should be deprived of it. The evidence here does not establish that the appellee has been promiscuously immoral. There is no intimation that she was ever guilty of indiscretion with any man other than Purdy. She evidently was in love with him since she was procuring the divorce to marry him and, as stated in the appellant's brief, she did marry him after the divorce was granted."

The record discloses that appellant was extremely anxious to keep the child close to her in Kentucky as evidenced by her attempt to supersede the judgment and thus prevent the appellee from removing the child from the State pursuant to the judgment. There is indication that she was fearful the father would attempt to abduct the child, and if taken pursuant to judgment, refuse to return it at the end of six weeks.

Supplemental record herein shows that after this court ruled on the supersedeas executed by appellant, appellee took the child to New York after executing a

$250 bond to insure his return, but, upon the expiration of the six weeks' period, the father did not return the child to Kentucky. Whereupon, appellant, accompanied by a Deputy Sheriff, armed with a warrant under KRS 435.240(3), and extradition papers signed by the Governor, journeyed to New York to obtain the child and to bring the appellee back to Kentucky under arrest. For some reason the Governor of New York did not honor these papers, but informed attorney of appellee that something would be done unless the child was given over to appellant. The child was then surrendered to the appellant and brought back to Kentucky.

Appellant now insists that, because of this attitude upon the part of appellee, the bond in the sum of $250 set by the chancellor should be increased to $5000.

Both appellant and appellee in briefs recognize that the paramount issue is the best interest of the child, which must transcend the desires of the parents. See Skidmore v. Skidmore, 261 Ky. 327, 87 S. W. 2d 631; and Burke v. Burke, 267 Ky. 734, 103 S. W. 2d 291. Therefore, proper consideration of the cause must take into account the well being of the child. It cannot be denied that any child needs personal affection. This child needs to know both its father and mother. The parents must recognize that this disturbing situation brought about by them, works an undue hardship upon this child. By acts and conduct not of its own making, this child will be deprived of the joint personal affection of its parents. Thus deprived there is danger that it might grow up into a pathetically distorted individual. This danger is a source of anxiety to the court and should be to the parents.

Under the circumstances as disclosed by this record, we conclude, that without undervaluing one side, or exaggerating the other to eithers advantage or disadvantage, the court below in its judgment decided as nearly right as could be decided under this record, with the exception of its order of the bond in the sum of $250. In the light of the experience in obtaining the return of the son, as heretofore mentioned, we direct that the bond be increased from $250 to $1000 to insure the return of the child at the end of the six weeks' period so awarded to appellee. In that respect alone the judgment is reversed on the appeal, and in all other respects it is affirmed.